

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 2, 2020

**BY ECF**
Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:   *United States v. Alhasana Hydara*
               No. 20 Cr. 473 (VM)

Dear Judge Marrero:

      The Government respectfully submits this letter in advance of the April 9, 2021 sentencing of defendant Alhasana Hydara. For the reasons set forth below, the Government respectfully submits that a sentence within the Stipulated Guidelines Range of 27 to 33 months' imprisonment would be sufficient but not greater than necessary to serve the purposes of sentencing.

**I.  BACKGROUND**

      From at least April 2019 up to and including June 2019, the defendant engaged in a bank fraud conspiracy. (Presentence Investigation Report ("PSR") ¶¶ 2-4). The defendant and his co-conspirators deposited false or fraudulent checks into the bank accounts of third parties. The bank then extended credit to the accountholder or, in some cases, failed to recognize that the check was fraudulent. Before the bank realized its error and returned the check, the defendant and his co-conspirators withdrew the funds, often by purchasing postal money orders or by making ATM withdrawals.

      On or about May 23, 2019, the defendant deposited a fraudulent check for approximately $19,662.70 into the bank account of a third party in New York. (PSR ¶ 62). Approximately $18,030 in postal money orders were purchased using funds from that account, and the defendant withdraw approximately $1,100 in cash from that account. (*Id.*). One of this defendant's co-defendants deposited a check for approximately $147,333.32 into the same account just three days earlier. (*See* PSR ¶ 60).

      Also on or about May 23, 2019, the defendant deposited a fraudulent check in the amount of approximately $18,400 into the bank account of a different third party in New York. (PSR ¶ 63). Approximately $18,000 was later withdrawn from that account in the following days. (*Id.*).

      The accounts and transactions described above do not represent the full scope of the scheme. Other defendants in this case deposited fraudulent checks, and this investigation

identified many fraudulent checks deposited into accounts that later benefited the defendants, for which surveillance records do not show who deposited the check. (PSR ¶¶ 34-42).

On September 10, 2020, the defendant was indicted by a grand jury sitting in this district on charges of bank fraud, conspiracy to commit bank fraud, and aggravated identity theft. (PSR ¶¶ 1-4). *See* 18 U.S.C. §§ 1344, 1349, 1028A. Although the defendant was initially released before trial, he was unable to obtain co-signers for his bond, and the Government moved for a bail revocation hearing. (Dkt. No. 50). The defendant failed to appear for the hearing, and the Honorable Katharine H. Parker issued a bench warrant. (Dkt. No. 67). The defendant has been detained since his arrest on that bench warrant on October 6, 2020. (Dkt. No. 72).

On February 8, 2021, the defendant pleaded guilty pursuant to a plea agreement to Count One of the Indictment, charging the defendant with conspiracy to commit bank fraud, in violation of 18 U.S.C. §1349. That plea occurred before the Honorable Gabriel W. Gorenstein, and on February 25, 2021, this Court accepted the plea. (Dkt. No. 96).

According to the plea agreement, the defendant's base offense level is 7, pursuant to U.S.S.G. § 2B1.1(a)(1). The intended loss is calculated as the sum of fraudulent checks deposited into the accounts with which the defendant also interacted, or approximately $185,000. (PSR ¶ 71). Accordingly, because the intended loss amount is greater than $150,000 but less than $250,000, the offense level is increased by ten levels pursuant to U.S.S.G. § 2B1.1(b)(1)(F).[1] After deducting three points for acceptance of responsibility, the offense level is 14. Because the defendant has eight criminal history points, he is in Criminal History Category IV, with a Stipulated Guidelines Range of 27 to 33 months' imprisonment. (PSR ¶ 19). Probation has reached the same result. (PSR ¶ 148).

## II. DISCUSSION

### A. Applicable Law

The Sentencing Guidelines provide strong guidance to sentencing courts after *United States v. Booker*, 543 U.S. 220 (2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49.

After making that calculation, the Court must consider the factors outlined in 18 U.S.C. § 3553(a), which provides that a sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and sets forth seven specific considerations:

---

[1] The plea agreement also calculates restitution in the amount of $37,537, reflecting the actual loss to the bank for those same accounts. (PSR ¶ 77). Finally, it calculates forfeiture in the amount of $1,100, reflecting the amount of money actually withdrawn by the defendant. (PSR ¶ 159).

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed—

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available;

    (4) the kinds of sentence and the sentencing range established [in the Guidelines];

    (5) any pertinent policy statement [issued by the Sentencing Commission];

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

    The Second Circuit has recognized that "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States* v. *Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006); *see also Kimbrough* v. *United States*, 552 U.S. 85, 108–09 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." (quotations omitted)).

### B. The Court Should Impose a Sentence Within the Stipulated Guidelines Range

    In this case, the nature and circumstances of the defendant's offense, his criminal history, and the need to promote respect for the law, to provide just punishment, to protect the public, and to deter future criminal conduct all weigh in favor of a sentence within the Guidelines Range of 27 to 33 months' imprisonment. Such a sentence would be sufficient, but not greater than necessary, to serve the purposes of sentencing.

    *First*, a Guidelines sentence is appropriate to reflect the seriousness of the defendant's conduct, to provide just punishment, and to promote respect for the law. The bank fraud statute proscribes conduct that "implicates social consequences far more serious than those generally surrounding individual disputes," and therefore "criminalizes not just actual injuries done to particular persons, but a 'scheme or artifice' intended to defraud that offends public values as

well." *United States v. Falkowitz*, 214 F. Supp. 2d 365, 380 (S.D.N.Y. 2002) (describing the analogous wire fraud statute); *see United States v. Teman*, No. 19-CR-696, 2019 WL 7041646, at *7 (S.D.N.Y. Dec. 20, 2019) ("Bank fraud is undeniably a serious offense."). The criminal conduct within the ambit of the bank fraud statute captures attempts to steal money by exploitation of public trust.

The defendant did just that. He took advantage of the financial system to deposit fraudulent checks and withdraw money. As he acknowledges, he did so to support his use of drugs. (PSR ¶ 131). And had banks not been on guard for individuals like the defendant, the actual loss would have been closer to the intended loss.

*Second*, a Guidelines sentence is necessary to protect the public and deter future criminal conduct. Regarding general deterrence, the defendant's criminal activities did not require an especially intricate scheme. The tools to commit these offenses are widely available, and it is therefore important that others see a clear and direct connection between commission of those offenses and criminal punishment.

*Third*, regarding specific deterrence, as Probation notes, the defendant has sustained four convictions since March 2019 for attempted or completed petit larceny and menacing in the second degree, and the defendant has two other pending criminal cases. (PSR ¶¶ 93-96, 101-02, p. 31). He committed this offense while on probation. (PSR ¶ 98). He failed to appear for a conference. And during his six months in prison, he has had three disciplinary infractions. (PSR ¶ 21). There is significant need to make clear to the defendant that resuming this sort of fraud upon release would cause serious consequences.

### III. CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range of 27 to 33 months' imprisonment.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

by: _____/s/_____
Andrew A. Rohrbach
Assistant United States Attorney
(212) 637-2345

CC: Donald Yanella, Esq. (by ECF)