L49sHYDs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                                    20 CR 473 (VM)
                                                Telephone Conference

ALHASANA HYDARA,

             Defendant.

------------------------------x

                                                  New York, N.Y.
                                                  April 9, 2021
                                                  9:00 a.m.

Before:

                   HON. VICTOR MARRERO,

                                     District Judge

                             APPEARANCES

AUDREY STRAUSS
     United States Attorney for the
     Southern District of New York
ANDREW ROHRBACH
     Assistant United States Attorney

DONALD J. YANNELLA, III
     Attorney for Defendant

1                (The Court and all parties appearing telephonically)

2                THE COURT:  Good morning.  This is Judge Marrero.

3                Do we have a court reporter on the line?

4                THE REPORTER:  Good morning, your Honor.  Lisa Frankó

5       from the court reporter's office.

6                THE COURT:  Counsel please enter your appearances for

7       the record.

8                MR. ROHRBACH:  Good morning, your Honor.  This is

9       Andrew Rohrbach for the government.

10               MR. YANNELLA:  Good morning.  This is Donald Yannella

11      for Alhasana Hydara.

12               THE COURT:  Thank you.

13               This is a proceeding in the matter of United States v.

14      Hydara.  This is docket number 20 CR 0473.  The court scheduled

15      this proceeding as the sentencing of the defendant in this

16      matter.  As you know, we are in the middle of a COVID-19

17      pandemic, and I am conducting this proceeding remotely pursuant

18      to the authority provided by Section 15002 of the CARES Act and

19      the standing orders issued by the Chief Judge of the Southern

20      District of New York pursuant to that Act.  Counsel are

21      appearing telephonically and the defendant is also

22      participating by telephone rather than in person.  I am

23      conducting this proceeding by teleconference rather than video

24      conference under the CARES Act because I find that video

25      conferencing is not yet reasonably and reliably available in

this district at this time, based on my understanding of the District's current limited technical capacity and other practical considerations.

The court scheduled this proceeding to sentence Mr. Hydara. Under normal circumstances, everyone participating in the proceeding would be physically present in the courtroom. I am instead conducting the proceeding remotely to ensure the safety of everyone and avoid the spread of the COVID-19 pandemic. I note that defense counsel has indicated Mr. Hydara's consent to proceed remotely.

I want to confirm on the record that, in fact, Mr. Hydara has agreed to proceed by means of teleconference.

Mr. Hydara, did you discuss waiving your physical appearance for sentencing with your attorney?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you agree to participate in this proceeding by teleconference?

THE DEFENDANT: Yes, your Honor.

THE COURT: I find that Mr. Hydara has knowingly and voluntarily agreed to participate in the conference by telephone and has consented to waiver of his right to appear in person.

I have read and reviewed the presentence investigation report, dated March 25, 2021, which was prepared in connection with today's sentencing of Mr. Hydara. I have also read the

1    submission from defense counsel, dated March 30, 2021,
2    including the attached exhibits, as well as the submission from
3    the government dated April 2, 2021.
4             Mr. Rohrbach, has the government read and reviewed the
5    presentence report?
6             MR. ROHRBACH:  Yes, your Honor.
7             THE COURT:  Does the government have any objections to
8    the report to raise at this point?
9             MR. ROHRBACH:  No, your Honor.
10            THE COURT:  Thank you.
11            Mr. Yannella, have you read and reviewed the report?
12            MR. YANNELLA:  Yes, your Honor.
13            THE COURT:  Have you had an opportunity to discuss it
14   with Mr. Hydara?
15            MR. YANNELLA:  Yes, I have, your Honor.
16            THE COURT:  And do you have any objections to the
17   report to raise at this point?
18            MR. YANNELLA:  No, your Honor.
19            THE COURT:  Mr. Hydara, have you read and reviewed the
20   presentence report?
21            THE DEFENDANT:  Yes, your Honor.
22            THE COURT:  Have you discussed it with your attorney?
23            THE DEFENDANT:  Yes, your Honor.
24            THE COURT:  On February 8, 2021, Mr. Hydara pled
25   guilty pursuant to a plea agreement before Magistrate Judge

L49sHYDs

Gorenstein to Count One of indictment number 20 CR 0473, which charged him with conspiracy to commit bank fraud, in violation of 18 U.S.C. Section 1344.

      Mr. Rohrbach, does the government have additional comments for the court's consideration beyond the government's written submission?

      MR. ROHRBACH: No, your Honor. We rest on our submission, unless the court has any questions.

      THE COURT: Thank you.

      Mr. Yannella, do you have any additional comments with regards to the defendant's sentencing?

      MR. YANNELLA: Yes, your Honor.

      If I may, I would like to point out that my client's mother, Kujay Hydara, is attending this court appearance telephonically. And I want to say that my client and his mother and I have all discussed individually and collectively why we should ask your Honor to give my client, Mr. Hydara, time served when the guidelines are 27 to 33 months and he's only been in jail for approximately six months, since October 6 of 2020.

      Because naturally, your Honor is going to have to know what has changed since when you got probation back in 2019 and you violated the probation, what has changed since when you were originally released on bond in the instant case, and then did not comply with the directives of pretrial services and, in

1   fact, got re-arrested and didn't appear for a bond hearing when
2   required to do so.  So we know in a way we have an uphill
3   battle.
4           But after these conversations with my client, I do
5   think he's changed.  When he went to Rikers Island to serve a
6   term of six months for the violation of two years' probation on
7   the state court, he ended up serving only four months.  And he
8   was in a part of Rikers Island that was devoted exclusively to
9   juveniles.  And he tells me that while he was on Rikers Island,
10  he was surrounded by other young men, not juveniles, young men
11  who were in their teens, and they were continuing to misbehave
12  and inclined to continue to commit crimes.
13          So it wasn't a situation where he was learning to
14  rehabilitate himself or he was really being deterred from going
15  out and continuing to commit criminal activity, and he hadn't
16  learned his lesson after he was released on bond.  He obviously
17  hadn't learned his lesson because of what occurred.
18          But, your Honor, I do think things have changed for
19  him since he was arrested on October 6 of 2020 and now.  He
20  does realize now how much trouble he is in.  He realizes that
21  he can easily get a sentence today of 27 to 33 months.  He
22  realizes that if he is lucky enough to get a downward
23  variance -- and we're hoping for a sentence of time served,
24  although we have no idea what your Honor is going to impose --
25  but he also knows that if he gets a downward variance and he's

released and he again does not comply with the directives of the probation department or he gets re-arrested, he will face not only time for whatever new case he has, he will face time for a violation of supervised release.

So, in other words, if he is lucky enough to get a downward variance, this case is not over. He could end up right back in the MCC if he continued to commit crimes or doesn't do everything that pretrial services tells him, what the probation department tells him to do.

His mother who is on the line is really very concerned for him. It broke her heart not to be able to sign the bond when he was originally released on pretrial services. But at that time, he was out of control. She just really couldn't control him. But she speaks to him as much as possible while he is in the MCC. She is ready to take a chance on him and have him come into her home again. The father who lives with them is willing to allow him to work in the family's painting and remodeling business, where my client's twin brother currently works. So he does have a stable home, he has a loving family, he potentially has a job, and he knows the consequences of what happens if he doesn't take advantage of any opportunity that your Honor might give him.

Now he is going to speak. He is going to tell your Honor what he's learned in the MCC. And surprisingly, in a way, he has learned something, because he's been sharing a cell

L49sHYDs

1  with a person he calls his bunkie, and his bunkie is 57 years
2  old, or in his 50s, and he's taught my client quite a lot about
3  what life could be like if he continues to lead a life of
4  crime.
5              With that, I would like to turn it over to my client.
6  But as I said in my papers, I respectfully request a sentence
7  of time served, especially during times of COVID-19, where it's
8  been so difficult to be at the MCC during the lockdown, and my
9  client already had COVID-19.
10             Thank you, your Honor.
11             THE COURT:  Thank you.
12             Mr. Hydara, is there anything you would like to say on
13 your own behalf before the court sentences you?
14             THE DEFENDANT:  Yes, your Honor.
15             During the harsh conditions at MCC has opened my eyes,
16 your Honor, and made me realize how precious my freedom is.
17             For the past month, I've been talking with my bunkie
18 named Charleton Hightower.
19             (Court reporter interruption)
20             THE COURT:  Thank you, Mr. Hydara.
21             Please slow down your presentation and indicate your
22 bunkmate's name.
23             THE DEFENDANT:  I don't know how to spell my bunkie's
24 name, but I know how to spell his last name.  His last name is
25 Hightower.  H-i-g-h-t-o-w-e-r.

1       THE COURT:  All right.  Thank you.

2       Proceed more slowly so the court reporter can take
3  down what you're saying.

4       THE DEFENDANT:  Yeah.  Um, I have a bunkie named
5  Charleton Hightower.  He is a 58-year-old man who just finished
6  doing 24 years in prison.  He told me something that really
7  caught my attention, and he said, Look at me and tell me what
8  do you see.  I was trying to figure out what he meant.  And
9  then he then told me that I'm looking at myself in the future
10 if I don't change my ways, and I still have time to make
11 something out of my life.  So if you give me a chance, I would
12 take full advantage of this opportunity, your Honor.

13      Thank you for letting me speak.

14      THE COURT:  Thank you.

15      In accordance with the decision by the United States
16 Supreme Court in the United States v. Booker, while the United
17 States Sentencing Guidelines are not mandatory, this court
18 nonetheless must consult those guidelines and take them into
19 account when sentencing.  Therefore, this court has considered
20 the findings of fact stated in the presentence investigation
21 report, as well as the guidelines analysis and recommendations
22 contained therein.  The court has weighed this information
23 along with the factors listed in 18 U.S.C. Section 3553(a) in
24 coming to its final sentencing decision in this case.

25      The court adopts the factual recitation in the

1  presence investigation report regarding the criminal history
2  category, offense level, and sentencing range.  Therefore, the
3  court finds that, under the guidelines, Mr. Hydara's offense
4  level amounts to 14 and his criminal history category falls
5  into category IV.  The statutory maximum sentence of
6  imprisonment is 30 years' imprisonment.  The guidelines range
7  of imprisonment for the offense level and criminal history
8  category is 27 to 33 months' imprisonment.
9         Mr. Hydara pled guilty to one count of conspiracy to
10 commit bank fraud, in violation of 18 U.S.C. Section 1344.
11 The probation office has recommended that the court impose a
12 sentence of 18 months' imprisonment.
13        Subsection (a)(1) of 18 U.S.C. Section 3553
14 requires that courts take into consideration the nature and
15 circumstances of the offense and the history and
16 characteristics of the defendant.  Subsection (a)(2) of
17 18 U.S.C. Section 3553 requires that the court consider the
18 need for the sentence to promote certain objectives of the
19 criminal justice system, namely:  Punishment, specific and
20 general deterrence, and rehabilitation.
21        Pursuant to Section 3553(a)(6), the court is also
22 directed to consider the need to avoid unwarranted sentencing
23 disparities among defendants with similar records and similar
24 offenses in other cases, as well as in connection with the case
25 at hand.

1     Mr. Hydara, taking into account the nature and
2 circumstances of the offense and the history and
3 characteristics of the defendant, and considering all of the
4 factors listed in 18 U.S.C. Section 3553(a), this court finds
5 that a sentence of 24 months' imprisonment is reasonable and
6 appropriate, in that such a term is sufficient but not greater
7 than necessary to promote the proper objectives of sentencing.
8     Upon your release from imprisonment, you shall be
9 placed on supervised release for a term of three years.
10     I will not impose a fine because the court has
11 determined that you do not have the ability to pay such a fine.
12 However, you are ordered to pay to the United States a special
13 assessment of $100, which shall be due immediately.
14     I understand that the government has submitted a
15 proposed forfeiture and restitution order.  Mr. Rohrbach, would
16 you summarize the terms of the forfeiture and restitution
17 order?
18     MR. ROHRBACH:  Yes, your Honor.
19     The proposed forfeiture order provides that the
20 defendant will pay forfeiture to the United States in an amount
21 of $1,100 in United States Currency, representing the amount of
22 proceeds traceable to the defendant in the offense charged in
23 Count One of this indictment that the defendant personally
24 obtained.  And the restitution order says that the defendant
25 shall pay restitution in the amount of $37,534.50 to the victim

1    of the offense charged in Count One, specifically to Bank of
2    America, and that some of that amount, $19,135.60 is joint and
3    several with one of the codefendants in this case.
4             THE COURT:  All right.  Thank you.
5             Mr. Hydara, in addition to this sentence of
6    imprisonment, and the assessment that I have just imposed,
7    you're ordered to pay the amount of the forfeiture to the
8    government as summarized by the government just now, and you
9    are also ordered to pay restitution to the victims of your
10   crimes in accordance with the terms of the restitution order
11   that the government has submitted.
12            Mr. Hydara, you must comply with the standard
13   conditions 1 through 12 of supervised release and the following
14   mandatory conditions:
15            You must not commit another federal, state or local
16   crime.
17            You must not unlawfully possess a controlled
18   substance.
19            You must refrain from any unlawful use of a controlled
20   substance.  You must submit to one drug test within 15 days of
21   release from imprisonment and at least two periodic drug tests
22   thereafter, as determined by the probation department.
23            You shall cooperate in the collection of DNA, as
24   directed by the probation officer.
25            You must notify the court of any material change in

your economic circumstances that might affect your ability to pay restitution, fines, or special assessments.

You must make restitution in accordance with 18 U.S.C. Sections 2248, 2259, 2264, 2327, 3663, 3663(a), and 3664.

In addition, Mr. Hydara, you shall comply with the following special conditions:

You shall submit your person, and any property, residence, vehicle, papers, computer, other electronic communication, data storage devices, cloud storage or media, and effects to a search by the United States Probation Officer, and if needed, with assistance of any law enforcement. The search is to be conducted when there is a reasonable suspicion concerning a violation of the conditions of supervision or unlawful conduct by the person being supervised. Failure to submit to a search may be grounds for revocation of release. You shall warn any other occupants that the premises may be subject to search pursuant to this condition. Any search shall be conducted at a reasonable time and in a reasonable manner.

You will participate in an outpatient drug treatment program approved by the United States Probation Office, which program may include testing to determine whether you have reverted to using drugs or alcohol. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The court authorizes the release of available drug treatment evaluations and reports,

1  including the presentence investigation report, to the
2  substance abuse treatment provider.
3        You must provide the probation officer with access to
4  any requested financial information. You must not incur any
5  new credit card charges or open additional lines of credit
6  without approval of the probation officer unless you are in
7  compliance with the installment payment schedule.
8        You must participate in an educational program or
9  vocational training as directed by the probation officer.
10        Coming back to the schedule for payment of
11  restitution, at a minimum, the payment shall begin within
12  30 days of your release from custody, and shall be at the rate
13  of 10 percent of gross income on a monthly basis.
14        Mr. Hydara, do you understand each of these
15  conditions?
16        THE DEFENDANT: Yes, your Honor.
17        THE COURT: You shall report to the nearest probation
18  office within 72 hours of release from custody.
19        The court recommends that you be supervised by the
20  district of residence.
21        In imposing this sentence, I have read through the
22  defendant's PSR and the submissions from the parties and
23  defense counsel on behalf of Mr. Hydara and the government and
24  all of the exhibits attached to those submissions in search for
25  something that constituted sufficient grounds for mitigation

1   and departure unique to Mr. Hydara.  I regret that very

2   detailed search did not yield much basis for the time served

3   sentence that Mr. Hydara has recommended.

4         Mr. Hydara was involved in multiple crimes in a short

5   span of time.  This is not a situation of a one-shot crime.

6   The offense also involved multiple parties.  Mr. Hydara, in a

7   very short period of time, has managed to accrue a very

8   extensive criminal history category involving multiple offenses

9   over a relatively short period of time.  Mr. Hydara refused or

10  did not comply with conditions of bail or cooperate with the

11  probation officer when he was on release.  And regrettably,

12  even Mr. Hydara's parents have expressed concern about him and

13  expressed their lack of confidence in his ability to turn his

14  life around when they would not sign the bond.  All of these

15  circumstances convince me that despite Mr. Hydara's

16  representation that he has turned his life around, I am not

17  sufficiently persuaded that that is the case as of this point.

18        I have, in addition, taken into account the few

19  strands of positive that come through the record.  Mr. Hydara

20  has strong family support.  He comes from a tightly knit family

21  and he has expressed remorse.  I believe, however, that those

22  elements of positive components of the PSR and the record are

23  not sufficient to warrant much more departure by the court.

24        The sentence as stated is imposed.

25        Mr. Hydara, to the extent you have a right to appeal

L49sHYDs

1  your sentence and you're unable to pay the cost of an appeal,
2  you have the right to apply for leave to appeal *in forma*
3  *pauperis*, meaning as a poor person.  If you make such a
4  request, the Clerk of Court must immediately prepare and file a
5  notice of appeal on your behalf.
6             Do you understand your right to appeal, to the extent
7  that it may exist?
8             THE DEFENDANT:  Yes, your Honor.
9             THE COURT:  Mr. Rohrbach, are there any remaining
10 counts or underlying indictments that need to be dismissed at
11 this time?
12            MR. ROHRBACH:  Yes, your Honor.
13            There are open counts, and the government moves to
14 dismiss them against Mr. Hydara.
15            THE COURT:  They will be so ordered.
16            Mr. Yannella, is there anything else on behalf of the
17 defendant?
18            MR. YANNELLA:  No, your Honor.
19            THE COURT:  All right.  Thank you.  Have a good day
20 and a good weekend.
21            THE DEFENDANT:  Your Honor?
22            THE COURT:  Yes.
23            THE DEFENDANT:  Um, what did I get sentenced to, your
24 Honor?
25            THE COURT:  24 months and three years of supervised

L49sHYDs

1 release.
2       THE DEFENDANT:  All right, your Honor.
3       THE COURT:  Thank you.  Have a good day.
4       THE DEFENDANT:  You too.
5                   * * *